# EXHIBIT A

*Settlement Agreement*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ALMA M. GONZALEZ, SHERMAN D. SPRADLEY and AHMED A. DUALE, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TURKEY VALLEY FARMS, LLC, and LIFE-SCIENCE INNOVATIONS, LLC,<br><br>Defendants. | Case No. 0:14-cv-04192-HB |

## SETTLEMENT AGREEMENT AND RELEASE

WHEREAS on October 9, 2014, Plaintiffs (the "Named Plaintiffs") filed the above pending captioned civil action in the United States District Court for the district of Minnesota against Defendants Turkey Valley Farms, LLC, and Life-Science Innovations, LLC ("Defendants"), on behalf of themselves and other similarly-situated current and former employees of Defendants (the "Lawsuit");

WHEREAS, in the Complaint (as amended), the Named Plaintiffs assert, on behalf of themselves and a proposed class of employees, claims for allegedly unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), as well as claims under Minnesota statutes, rules and regulations, including without limitation, the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq.* (the "MFLSA") and

Minnesota Rule 5200.0120, and claims alleging breach of contract and unjust enrichment/quantum meruit;

WHEREAS, the Parties conducted a settlement conference in Minneapolis, Minnesota, on May 20, 2015 to discuss a possible resolution of this matter;

WHEREAS, at the settlement conference, the Parties agreed to the terms of a settlement of the Lawsuit;

WHEREAS, the Parties appeared before the Court on May 21, 2015, and apprised the Court of the material details of this settlement;

WHEREAS, it is the desire of all Parties to fully, finally, and forever memorialize, settle, compromise, and discharge all disputes and claims that have been brought in the Lawsuit or that reasonably arise out of the facts alleged in the Lawsuit;

NOW, THEREFORE, in consideration of the mutual covenants, promises and warranties set forth herein, the Parties agree, subject to the Court's approval, as follows:

1.   This Settlement Agreement and Release (hereinafter "Settlement Agreement") is made and entered into by and between the Named Plaintiffs, individually and on behalf of themselves and the Settlement Class (collectively, "Plaintiffs"), and Defendants, and sets forth the terms and conditions of the settlement of the Lawsuit (the "Settlement"). This Settlement is subject to the approval of the Court. The Parties agree to cooperate and take all steps necessary and appropriate to obtain preliminary and final approval of this Settlement and to dismiss this action with prejudice upon final judicial approval of the terms and conditions of the Settlement.

2.     The Settlement Class (including the Named Plaintiffs) and Defendants herein are collectively referred to as "the Parties." "Class Counsel" refers to Sheran Law Office P.A. and Bassford Remele, PLLP, and "Defendants' Counsel" refers to Jackson Lewis P.C.

3.     **Settlement Class.** The "Settlement Class" is defined as the Named Plaintiffs and all current and former hourly non-exempt employees of Defendant's Marshall, Minnesota facility who performed donning and doffing activities on Defendant's premises, including hourly paid supervisors, during the three-year period before the filing of the Complaint. The Settlement Class also includes hourly line workers whose time was recorded and reported using Turkey Valley Farms' timekeeping system and who were working at the Marshall facility as temporary workers employed by a staffing company, notwithstanding the disputed issue of whether either Defendant was a joint employer of those individuals. Positions within the description above are referred to herein as "Qualifying Positions." Members of the Settlement Class are referred to as "Class Members." The "Settlement Claims" are those claims defined in the Release language in Section 11 below. If there is any dispute regarding whether or when any person was employed in and regularly worked in a Qualifying Position during the Class Period, the individual employment and payroll records maintained by Defendants will be presumed accurate absent clear and convincing evidence to the contrary. As explained below, the Parties will seek certification of the Settlement Class for settlement purposes only.

3

4.   **Class Period.**  The "Class Period" is defined for each Class Member as the period during which the Class Member was employed and working at Defendants' Marshall, Minnesota, facility in a Qualifying Position from October 9, 2011, until the earlier of (i) the Class Member's termination date, or (ii) the date the Court enters a Preliminary Approval Order approving the Settlement.

## NO ADMISSION

5.   The Parties acknowledge and agree that there is a good-faith dispute as to whether any amounts for alleged unpaid wages are owed, and they agree that the amount to be paid under this Settlement Member represents a good faith compromise of such dispute. Each of the Parties hereto has entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.  In particular, and without limiting the generality of the foregoing, nothing in this Settlement, nor the consummation of this Settlement, is to be offered, construed or deemed an admission of liability, culpability, negligence, wrongdoing impropriety, responsibility or fault whatsoever on the part of Defendants, Releasees, or the employees and agents of any of them, and all such entities and persons expressly deny any liability, culpability, negligence, wrongdoing, impropriety, responsibility or fault whatsoever.

6.   In addition, and also without limiting the generality of the foregoing, nothing about this Settlement shall be offered or construed as an admission or evidence of the propriety or feasibility of certifying a class in the litigation or any other action for adversarial, rather than settlement, purposes.  While Defendants have agreed

4

that class certification is appropriate for settlement purposes, this agreement is for settlement purposes only and Defendants maintain that class certification would be inappropriate if the Parties were to continue litigating the case.  If the Settlement Agreement is not finally approved by the Court, Defendants' agreement to certification of the above classes for settlement purposes only shall be null and void and may not be used or relied upon by Plaintiffs, Class Counsel, or any Class Member for any purposes.

### INVESTIGATION AND APPROVAL BY
### CLASS COUNSEL AND DEFENSE COUNSEL

7.    Class Counsel and Defendants' Counsel, respectively, have investigated the facts relating to the claims alleged, and have made a thorough study of the legal principles applicable to the claims asserted against Defendants.  Class Counsel have investigated the facts relevant to the various claims, including an extensive review of voluminous documents and data produced to Plaintiffs, and have diligently pursued investigation and prosecution of the Class Members' claims against Defendants.   Class Counsel expressly acknowledge that there are differences and disputes, stated and unstated, that have arisen or foreseeably could arise between the Parties regarding the facts and law if this matter were not settled. Class Counsel have exercised their independent judgment and have determined that this Settlement is proper as stated herein after fully taking into account any risk, uncertainty, or unresolved issues or potential issues relating to discovery or disclosures or the completeness of their investigation, uncertainty as to facts and

circumstances, risk of significant delay, risk of loss or limited recovery, disputed interpretations of applicable law, potential future changes in or interpretations of applicable law, and the defenses asserted by Defendants.  Based upon Class Counsel's investigation, legal evaluation, and taking into account the sharply contested legal and factual issues involved, the rulings issued in this Lawsuit to date, as well as Class Counsel's assessment of the uncertainties of complex litigation and the relative benefits conferred upon the Class Members pursuant to this Settlement Agreement, Class Counsel have concluded that a settlement with Defendants on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Class Members.   In making these determinations, Class Counsel and Plaintiffs have not relied and do not rely on any assurance of Defendants or Defendants' Counsel that is not expressly stated herein.  Defendants and Defendants' Counsel also agree the Settlement as stated in this Settlement Agreement is a fair, reasonable, and adequate resolution of disputed claims.

## SETTLEMENT AMOUNTS AND ALLOCATION

8.   Defendants agree to make available up to Five Hundred and Ninety Thousand and no/100 Dollars ($590,000.00) for Class Members to claim on a *pro rata* basis. This amount is referred to herein as the "Gross Settlement Fund."  Except as specifically set forth in this Settlement Agreement as to Defendants' payment of the employer's share of applicable payroll taxes as required by law, under no circumstances shall Defendants be required to pay more than the Gross Settlement

6

Fund under this Settlement Agreement. Defendants shall not be required to set aside, deposit or transfer any funds except as expressly stated herein and not until after the Settlement Effective Date as defined below.

9. **Settlement Effective Date.** The Settlement embodied in this Settlement Agreement shall become effective on the "Settlement Effective Date," which is defined as the later of: (1) the date when the time for appeal of the Court's Final Approval Order as to this Settlement Agreement and entry of Judgment dismissing the case with prejudice has expired; or (2) the date of the final resolution of any appeal or other judicial review of the Settlement if an appeal has been filed and not dismissed.

10. **Payments Out of the Gross Settlement Fund.**

   a. **Administration of Settlement.** Class counsel will engage an independent Claims Administrator to administer the Settlement, and the fees and expenses of a Claims Administrator will be paid from the Gross Settlement Fund.

   b. **Net Settlement Fund.** The attorneys' fees and expenses/costs awarded by the Court and designated to be paid to Class Counsel, the Enhancement Awards approved by the Court, and the fees and expenses of the Claims Administrator, will be subtracted from the Gross Settlement Fund, and the remaining amount is the Net Settlement Fund.

   c. **Determination of Each Class Member's *Pro Rata* Available Settlement Share of the Net Settlement Fund.**

7

(1)  The Net Settlement Fund shall be allocated among all Class Members to establish for each Class Member his or her Available Settlement Share. Only putative Class Members who are excluded from the Settlement Class upon their request pursuant to Fed. R. Civ. P. 23(c)(2)(B)(v), as provided herein, shall be excluded from the allocation.

(2)  The Net Settlement Fund shall be allocated without regard to whether a Class Member timely executes and submits a Claim Form, but only those Class Members who properly and timely execute and submit a Claim Form shall have the right to be paid his or her Available Settlement Share.

(3)  The *pro rata* Available Settlement Share of the Net Settlement Fund available to each Class Member will be calculated using the following factors in addition to those defined elsewhere in this Settlement Agreement:

a)  "Total Workweeks," defined as the total number of workweeks in which all Class Members were employed in and regularly worked in a Qualifying Position in a Qualifying Position during the Class Period (without regard to which Class Members return a Claim Form);

b)  "Class Member Workweeks," defined separately for each Class Member as the number of workweeks he or she was

8

employed in and regularly worked in a Qualifying Position during the Class Period.

(4) The Net Settlement Fund shall be divided by the Total Workweeks to determine the Per Week Amount. The Available Settlement Share for each Class Member shall be determined by multiplying his or her Class Member Workweeks by the Per Week Amount.

(5) Defendants will provide the payroll records and will furnish proposed calculations and allocations to Class Counsel to assist Class Counsel, but Class Counsel shall be solely responsible for confirming the accuracy of allocation and calculation to establish each Class Member's Available Settlement Share.

(6) The Parties agree the method described above is a fair, reasonable, adequate and efficient method of calculating each Class Member's *pro rata* Available Settlement Share of the Net Settlement Fund.

d. **Reliance on Payroll and Swipe Records; Rebuttable Presumption.** The foregoing calculations shall be based on the records for Class Members made available to Defendants to Class Counsel. There is a rebuttable presumption that Defendants' records are correct, absent clear and convincing proof to the contrary. Class Members will have the opportunity, should they disagree with Defendants' records, to provide documentation and/or an explanation to show that they worked a different number of weeks in a Qualifying Position during the Class Period. In the

event of any such disagreement, Class Members must present this information to court prior to the date of the fairness hearing for resolution.

e.     **Attorneys' Fees and Expenses/Costs.** Class Counsel will apply to the Court (and Defendants will not oppose) for payment from the Settlement Fund of no more than $200,000.00 in attorneys' fees, and $25,000.00 in expenses/costs (exclusive of claims administrator costs). The total attorneys' fees and expenses/costs actually paid will be in the amount approved by the Court up to said amount, and the amount approved by the Court will be paid from the Gross Settlement Fund. The enforceability of this Settlement Agreement is not contingent on whether Court awards the amount sought for attorneys' fees and expenses/costs or a lesser amount. Plaintiffs and Class Counsel shall not be entitled to any attorney's fees or expenses/costs in addition to those awarded by the Court pursuant to this Settlement Agreement and paid from the Gross Settlement Amount. Defendants shall have no responsibility for allocating or distributing attorneys' fees or expenses/costs among the Class Counsel.

f.     **Enhancement Awards to Named Plaintiffs.** Class Counsel will apply to the Court (and Defendants will not oppose) for a payment from the Gross Settlement Fund of Enhancement Awards of One Thousand and No/100 Dollars ($1,000.00) for each of the three Named Plaintiffs in recognition of his or her role and participation as a Named Plaintiff and the release of her claims. These amounts shall be in addition to their shares from the Net Settlement Fund. The

10

enforceability of this Settlement Agreement is not contingent on whether Court awards the amount sought for any Enhancement Award or a lesser amount.

g.   **Tax Allocations.** The Settlement funds paid to each Class Member, not including any enhancements paid to the Named Plaintiffs, shall be allocated as follows: (1) 50 percent of the payment to each Class Member shall be allocated to wage claims; and (2) 50 percent of the payment to each Class Member shall be allocated to all non-wage claims, including liquidated damages, interest and other applicable statutory penalties.   The wage portion shall be subject to deductions as required by law.   The non-wage portion shall be paid without deductions, but a Form 1099 will be issued by the Claims Administrator as required by law.   All employer-paid and due payroll taxes on the wage portions of this Settlement shall be paid by Defendants, and said payroll taxes are in addition to the Settlement Fund.

h.   **Tax Reporting.** Within the time period prescribed by applicable law, the Claims Administrator will provide to each Class Member receiving a payment from the Settlement fund an IRS Form W-2 (for wages) and an IRS Form 1099 (for non-wages), and corresponding state tax reporting forms. The Claims Administrator will provide the Named Plaintiffs an IRS Form 1099 (and corresponding state form) for any Enhancement Awards received.   The Claims Administrator will provide Class Counsel with an IRS Form 1099 (and corresponding state form) for the attorneys' fees and expenses/costs awarded to Class Counsel.

11

## RELEASES BY THE NAMED PLAINTIFFS
## AND THE SETTLEMENT CLASS

11.  Upon Final Approval by the Court of this Settlement, the Class Members will release their wage and hour claims and all claims brought in this litigation (the "Settlement Claims") as provided herein. The releases will release and be for the benefit of Releasees, defined as follows: (i) Turkey Valley Farms LLC and Life-Science Innovations LLC; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Turkey Valley Farms LLC and Life-Science Innovations LLC and any staffing company that employed any of the temporary workers in the Settlement Class; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, attorney, or employee benefit or welfare program or plan (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subsection (i), (ii), or (iii) hereof. The scope of the releases is as follows:

a.  The Named Plaintiffs and the Class Members who execute and submit Claim Forms release and fully discharge Releasees from any and all claims, debts, penalties, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, that were alleged or that reasonably arise out of the facts alleged in the captioned action, which means all claims for allegedly uncompensated time or unpaid wages, and

including liquidated damages, interest, penalties or fines, that were asserted or could have been asserted in this lawsuit under state or federal law. This release also includes all claims under the Fair Labor Standards Act, as well as all such wage-related claims under Minnesota statutes, rules and regulations, including without limitation, the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21, *et seq.* (the "MFLSA"), claims alleging failure to maintain records required by the MFLSA, claims alleging breach of contract and unjust enrichment/quantum meruit, and claims alleging violation of Minnesota Statute § 177.254 and Minnesota Rule 5200.0120; and any other federal law, and any claims under state minimum wage laws, state wage payment and collection laws, state overtime statutes, common law and equitable principles, and express or implied wage contract claims. This release includes any claims which are derivative of the claims being released.

b. Class Members who do not execute and return Claim Forms release all such claims except claims under the FLSA, without regard to whether they accept funds under the Settlement or personally execute any Claim Form or release. The effect of the dismissal with prejudice of the Lawsuit on any future FLSA claim brought by any such person will be determined by the court in which any such FLSA claim is brought.

c.      In consideration of the Enhancement Award, each Named Plaintiff shall execute a General Release of all claims in the form attached hereto as Exhibit 1.

12.     In addition, there shall be included release language on the back of each check sent to each Class Member stating "I agree to all terms of the Settlement Agreement in *Gonzalez, et al. v. Turkey Valley Farms, LLC, et al.*, and waive any right to bring suit for wages under Minnesota law, the Fair Labor Standards Act or any other law as stated therein."

### DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

13.     Promptly upon execution of this Settlement Agreement, the Parties shall apply to the Court for the entry of an Order (the Preliminary Approval Order):

a.      Preliminarily approving the Settlement;

b.      Certifying the FLSA collective action and Rule 23 class action classes for purposes of the notice and claims process and determining whether the terms of this Settlement are fair, reasonable and adequate;

c.      Designating Named Plaintiffs Alma M. Gonzalez, Sherman D. Spradley, and Ahmed A. Duale, as representative Plaintiffs under 29 U.S.C. § 216(b) and appointing them as class representatives under Fed. R. Civ. P. 23, and appointing Plaintiffs' Counsel as Class Counsel, for purposes of settlement only;

d.      Approving as to form and content the proposed Notice and Claim Form attached to the Parties' Motion for Preliminary Approval as Exhibit B;

e.  Directing the mailing of the Notice and Claim Form by the Claims Administrator to the Class Members by First Class U.S. Mail; and

f.  Scheduling the date, time and location of a fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) (the "Fairness Hearing") at least 100 days after the entry of the Preliminary Approval Order, at which the Parties will seek Final Approval of the Settlement.

## DUTIES OF THE PARTIES FOLLOWING PRELIMINARY APPROVAL ORDER

14.  Within 10 days following the entry by the Court of a Preliminary Approval Order, Class Counsel will deliver to Defendants' Counsel copies of the General Release of all claims signed by each of the Named Plaintiffs as required under paragraph 11.c. above.

15.  Within 10 days following the entry by the Court of a Preliminary Approval Order, Defendants will provide to the Claims Administrator, with a copy to Class Counsel, a list of all Class Members and their current or last known addresses as shown in Defendants' records.

16.  **Notice to the Class Members.** A Notice and Claim Form, substantially in the form of Exhibit B to the Parties' Motion for Preliminary Approval and approved by the Court, including any modifications at the direction of the Court, shall be sent by the Claims Administrator to the Settlement Class, by first-class mail, within thirty five (35) calendar days after entry of the Preliminary Approval Order.

An envelope pre-addressed to the Claims Administrator will be included with the notice.

a.   Each Class Member who properly and timely executes and submits to the Claims Administrator the Claim Form shall receive payment and shall be bound by the Rule 23 class release, the FLSA release, and the dismissal with prejudice, as provided herein;

b.   Each Class Member who properly and timely submits to the Claims Administrator a letter requesting exclusion from the Class ("Request for Exclusion") shall be excluded from the Class, shall not participate in the Settlement, shall not receive payment, and shall not be bound by the Rule 23 class release, the FLSA release, or the dismissal with prejudice; or

c.   Each Class Member who does not return either a Claim Form or a Request for Exclusion shall not receive payment, but shall be a member of the Rule 23 class and shall be bound by the Rule 23 class release and dismissal with prejudice as to all claims based on any state statute, rule, or regulation. The preclusive effect of this Settlement and the judgment of dismissal on any future FLSA claim by any Class Member who does not either return a Claim Form or request exclusion as described above will be determined by the court in which the FLSA claim is brought.

17.   Any Notice and Claim Form returned to the Claims Administrator as undeliverable shall be sent to the forwarding address affixed thereto. If no forwarding address is provided, the Claims Administrator shall perform a standard

16

skip trace to attempt to determine the most current mailing address and shall resend the Notice and Claim Form to that address. The parties agree that the deadlines contained herein shall not be extended for Class Members whose Notices and Claim Forms were returned as undeliverable and re-mailed pursuant to this paragraph.

18. Class Members will have sixty (60) days from the date of first mailing of the Notice and Claim Form within which to return their Claim Forms to the Claims Administrator or to submit any Requests for Exclusion. Any Claim Forms or Requests for Exclusion must actually be received by the Claims Administrator on or before the 60th day from the date of first mailing of the Notice and Claim Form.

19. **Objections to Settlement.** Any Class Member, other than the Named Plaintiffs, may object to this Settlement, provided that such objections are made in writing and filed with the Court and served on counsel for the parties no later than sixty (60) days from the date of first mailing of the Notice and Claim Form. Such objection shall include the case identifying information specified in the Notice and Claim Form. No individual may be heard at the final Fairness Hearing who has not complied with this requirement. Any individual who fails to comply with this requirement will be deemed to have waived any right to object and any objection to the Settlement.

20. In the event that Counsel for the respective Parties receives any objections to the Settlement that the objecting Class Member has not filed with the Court, they shall

promptly exchange copies of such objections with one another and with the Claims Administrator, and shall file copies with the Court.

21. The Claims Administrator shall provide (in electronic format, suitable for filing with the Court) copies of all executed and returned Claim Forms and Requests for Exclusion. Counsel for the Parties shall file such materials with the Court at least five (5) days prior to the Fairness Hearing.

22. The Claims Administrator shall provide to Class Counsel and Defense Counsel a declaration by the Claims Administrator outlining the Claims Administrator's actions in mailing the Notice and Claim Form and receiving Claim Forms, Requests for Exclusion, or any other responses or communications from Class Members. Class Counsel and Defense Counsel shall file said Declaration with the Court at least five (5) days prior to the Fairness Hearing.

23. None of the Parties, their counsel, or any person on their behalf, shall solicit or otherwise encourage anyone to object to the Settlement, to return a Request for Exclusion, or to appeal from any order of the Court that is consistent with the terms of this Settlement.

## COURT APPROVAL; POTENTIAL VOIDING OF THE SETTLEMENT AGREEMENT

24. This Settlement Agreement is subject to approval by the Court.

25. Within seventy-five (75) days after the date of first mailing of the Notice and Claim Form, and not less than fifteen (15) days before the Fairness Hearing, the Parties will apply to the Court for an Final Approval Order finally approving the

Settlement as fair, adequate and reasonable, and will submit a proposed Final Approval Order and Judgment dismissing the Lawsuit with prejudice. The proposed Final Approval Order shall:

a.   Approve the Settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

b.   Approve the payment of an Enhancement Award to each Named Plaintiff of up to but not more than One Thousand and no/100 Dollars ($1,000.00) to each of the Named Plaintiffs;

c.   Approve Class Counsel's application for an award of attorneys' fees of up to but not more than Two Hundred Thousand and no/100 Dollars ($200,000.00), and reimbursement of expenses/costs of up to but not more than Twenty-Five Thousand and no/100 Dollars ($25,000.00);

d.   Approve the payment of the fees and expenses of the Claims Administrator as provided herein;

e.   Exclude from the Settlement Class those persons who properly and timely have submitted Requests for Exclusion as provided in Fed. R. Civ. P. 23(c)(2)(B)(v) and as stated above; and

f.   Direct entry of Judgment dismissing the Lawsuit on the merits and with prejudice, and permanently bar all Class Members from prosecuting any of the Settlement Claims released by the terms of this Settlement Agreement.

26.   In the event this Settlement Agreement is not finally approved by the Court, Defendants shall not be obligated to make any payments to the Named Plaintiffs, Class Counsel, or any Class Members under this Agreement.

27.   A failure of the Court to approve any material condition of this Settlement Agreement which effects a fundamental change of the Parties' Settlement shall render the entire Settlement Agreement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby. However, neither party may void the Settlement Agreement based on the Court's non-approval of any request for attorneys' fees and expenses/costs or Enhancement Awards or based on the award of any lower amount of attorneys' fees and expenses/costs or Enhancement Awards. The Court's failure to approve Plaintiffs' fee request or the Enhancement Award to any Named Plaintiff shall not render the Settlement Agreement unenforceable. Each Party may exercise its option to void this Settlement as provided in this paragraph by giving notice, in writing, to the other Party and to the Court at any time prior to the later of final approval of the Settlement by the Court or within one business day following the entry of any order or judgment effecting a change that authorizes voiding under this paragraph. If this Settlement is voided, this Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the lawsuit prior to the Settlement; and neither this Agreement nor any

ancillary documents, actions or filings shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

## SETTLEMENT PAYMENTS

28. Within twenty (20) days after the Settlement Effective Date, Counsel for the Parties, with the assistance of the Claims Administrator, will complete the following determinations:

    a. Defendants will provide to Class Counsel, to the extent not already provided, the information reasonably necessary for Class Counsel to compute each Class Members' *pro rata* Available Settlement Shares of the Net Settlement Fund using the method stated in this Settlement Agreement. Defendants shall provide this information on a confidential basis.

    b. With the assistance of Defendants' Counsel and the Claims Administrator, Class Counsel will confirm each Class Member's *pro rata* Available Settlement Share of the Net Settlement Fund as provided in Paragraph 10.c. above, taking into account the extent to which any putative Class Member has been excluded from the Class pursuant to request, and taking into account the Court's rulings on the awards of attorneys' fees and expenses/costs, Enhancement Awards, and the fees and expenses of the Claims Administrator at or following the Fairness Hearing; and

    c. The Parties will determine the total amount of the Available Settlement Shares that are to be paid to those Class Members who properly and timely executed and submitted Claim Forms. The funds for Available Settlement

Shares associated with those Class Members who did not properly and timely execute and submit Claim Forms shall not be included in said total amount, shall not be owed or payable, and shall remain the property of Defendants. Those Class Members who did not properly and timely execute and submit Claim Forms shall have no right to any payment under this Settlement.

d.    The Claims Administrator will determine the additional amount that Defendants must provide for the employer share of payroll taxes on the wage portions of payments to be made to those Class Members, and will notify the Parties of that amount.

29.    Within twenty (20) days after the Settlement Effective Date, Defendants will transfer by wire transfer to the account of the Claims Administrator the following amounts for distribution in accordance with the Settlement:

a.    An amount equal to the total amount of the Available Settlement Shares for those Class Members who properly and timely executed and submitted Claim Forms, plus the additional amount that Defendants is required by applicable law to pay for the employer share of payroll taxes on the wage portions of payments to be made to those Class Members.

b.    The amounts approved by the Court at or following the Fairness Hearing for:

(1)    The award to Class Counsel of attorneys' fees and expenses/costs;

(2)    The Enhancement Awards to the Named Plaintiffs; and

22

(3)   The amount approved by the Court for payment of the fees and expenses of the Claims Administrator.

30.   Within thirty-five (35) days after the Settlement Effective Date, the Claims Administrator shall distribute the appropriate amounts as follows:

a.   The Claims Administrator shall issue two checks to each Class Member who properly and timely executed and submitted a Claim Form, one check for the net wage amount (after withholding) and one check for the non-wage amount. Each check shall bear the release language on the back of the check as stated in paragraph 12 above. The Claims Administrator shall send those checks to each Class Member by First Class U.S. Mail.

b.   The Claims Administrator shall issue checks to each of the Named Plaintiffs for the Enhancement Award payments, and shall send those checks to each Named Plaintiff by First Class U.S. Mail.

c.   The Claims Administrator shall deliver to Class Counsel payment of the attorneys' fees and expenses/costs approved by the Court, either by check or by wire transfer, at the election of Class Counsel.

d.   The Claims Administrator shall disburse to itself payment of the fees and expenses of the Claims Administrator that have been approved by the Court.

31.   The Claims Administrator shall withhold the employee's share of taxes on the wage portions and shall remit said taxes, with the employer's share of payroll taxes, to the appropriate taxing authorities as required by law. The Claims

Administrator shall issue tax reporting forms (*e.g.*, W-2 and 1099) to the payees as required by law.

32.  Class Members have no right or claim to any funds made available under this Agreement unless and until they execute the release language contained on the back of the Settlement checks as described herein.

33.  Class Members shall have 120 calendar days after delivery of the checks to cash their Settlement checks.  If any Class Members do not endorse the release language and cash their checks within 120 days after delivery and their check is not returned, their checks will be void and the Claims Administrator will place a stop-payment order on such checks, and the Claims Administrator will return the funds for those checks to Defendants.  In such event, those Class Members will be deemed to have waived irrevocably any right in or claim to a Settlement share, but the Settlement Agreement and release contained herein will nevertheless be binding upon them.  The Claims Administrator shall promptly exercise reasonable efforts to seek a refund from the relevant tax authority of any taxes previously paid in connection with the uncashed Settlement amounts.  Upon receipt of any refunded taxes, the Claims Administrator must promptly return those amounts to Defendants.

## MUTUAL FULL COOPERATION

34.  The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement Agreement, including but not limited to, execution of such documents and to take such other action as may be reasonably necessary to implement the

24

terms of this Settlement Agreement.   The Parties to this Settlement Agreement shall use their best efforts, including all efforts contemplated by this Settlement Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement Agreement and the terms set forth herein.   As soon as practicable after execution of this Settlement Agreement, Class Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's final approval of this Settlement.

## ENFORCEMENT ACTIONS

35.   This Settlement Agreement is fully enforceable in the United States District Court for the District of Minnesota. The Parties consent to the jurisdiction of that Court to enforce the Settlement.

## NOTICES

36.   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder by any party to this Settlement Agreement shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by first class or certified mail, or overnight carrier, return receipt requested, addressed as follows:

To the Plaintiffs and Settlement Class:

> Daniel J. Sheran, Esq.
> Thomas R. Sheran, Esq.
> SHERAN LAW OFFICE, P.A.
> 222 South Ninth Street, Suite 1600
> Minneapolis, MN 55402

> Lewis A. Remele, Jr., Esq.
> Janine M. Loetscher, Esq.
> Aram V. Desteian, Esq.
> BASSFORD REMELE, PLLP
> 33 South Sixth Street, Suite 3800
> Minneapolis, MN 55402-3707

To the Defendants:

> L. Dale Owens, Esq.
> Jackson Lewis P.C.
> 1155 Peachtree St., NE, Suite 1000
> Atlanta, GA 30309

> D. Christopher Lauderdale, Esq.
> JACKSON LEWIS P.C.
> 15 South Main Street, Suite 700
> Greenville, SC 29601

## CONSTRUCTION

37.     The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arm's length negotiations between the Parties.  This Settlement Agreement has been drafted jointly by counsel for the Parties and shall not be construed in favor of or against any Party.

## CAPTIONS AND INTERPRETATIONS

38.   Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

## MODIFICATION

39.   This Settlement Agreement may not be changed, altered, or modified except in writing and signed by the Parties and expressly referring to this Settlement Agreement. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

## INTEGRATION CLAUSE

40.   This Settlement Agreement and attachments, including the executed General Releases by the Named Plaintiffs in the form attached hereto, constitutes the entire agreement between the Parties relating to the Settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein. The Parties expressly acknowledge that they have not relied on any representations or promises not expressly contained in this Settlement Agreement. No rights hereunder may be waived except in writing.

## BINDING SCOPE; NO PRIOR ASSIGNMENTS

41. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators and successors. The Parties hereto represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

## CLASS COUNSEL SIGNATORIES AND PARTIES' AUTHORITY

42. It is agreed that, because the Class Members are so numerous, it is impossible or impractical and not required to have each Member of the Class execute this Settlement Agreement. The Notice and Claim Form, Exhibit B to the Parties' Joint Motion for Preliminary Settlement Approval, will advise all Class Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Class Member.

43. The signatories hereby represent that as counsel for Plaintiffs they have fully explained the Settlement to the Named Plaintiffs, provided them with copies of the Settlement Agreement translated into their native languages as appropriate, that they have obtained the knowing and voluntary agreement of each of the Named Plaintiffs to the Settlement, and that they are fully authorized by the Named Plaintiffs to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

44. Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate and execute this Settlement Agreement and to take all appropriate action required to effectuate the terms hereof and to execute any other documents required to effectuate the terms of this Settlement Agreement.

## PUBLICITY

45. Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel agree to limit any media comments or publications to comments that the Lawsuit has been resolved to the satisfaction of the Parties, or similar language to that effect. The inclusion of this provision in the agreement is subject to the Court ruling that the provision is not contrary to public policy or otherwise legally improper. If the Court concludes this provision is improper, the provision shall be deleted from the Settlement Agreement and such deletion shall not affect the validity of the remainder of the Agreement.

## COUNTERPARTS

46. This Settlement Agreement may be executed in one or more counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties. Signatures sent by facsimile machine or scanned signatures in Portable Document Format sent by email shall be deemed original signatures. All executed copies of this Settlement Agreement, and

photocopies thereof, shall have the same force and effect and shall be legally binding and enforceable as the original.

## GOVERNING LAW

47.   All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of Minnesota and the United States of America, where applicable.

[CONTINUED ON NEXT PAGE]

Agreed this 8ᵗʰ day of September, 2015:

**ATTORNEYS FOR PLAINTIFFS:**

Lewis A. Remele, Jr. ( #90724)
lremele@bassford.com
Janine M. Loetscher (#389055)
jloetscher@bassford.com
Aram V. Desteian (#396021)
adesteian@bassford.com

BASSFORD REMELE,
A PROFESSIONAL ASSOCIATION
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402-3707
Tel: 612-333-3000
Fax: 612-333-8829

Daniel J. Sheran (#0100183)
danielsheran@sheranlaw.com
Thomas R. Sheran (#0100231)
thomassheran@sheranlaw.com

SHERAN LAW OFFICE P.A.
222 South Ninth Street, Suite 1600
Minneapolis, MN 55402
Tel:  612-337-9001
Fax:  612-338-0359

**ATTORNEYS FOR DEFENDANTS:**

D.  Christopher  Lauderdale  (SC  Bar
#64221) (admitted *pro hac vice*)
lauderdc@jacksonlewis.com
T. Chase Samples (SC Bar #77601)
chase.samples@jacksonlewis.com
JACKSON LEWIS P.C.
15 South Main Street, Suite 700
Greenville, SC 29601
Tel:  864-232-7000
Fax:  864-235-1381

David J. Duddleston (#139804)
duddlestond@jacksonlewis.com
JACKSON LEWIS P.C.
225 South Sixth Street, Suite 3850
Minneapolis, MN 55402
Tel: 612-341-8131
Fax: 612-341-0609

L. Dale Owens (GA Bar #557482)
owensd@jacksonlewis.com
JACKSON LEWIS P.C.
1155 Peachtree Street NE, Suite 1000
Atlanta, GA 30309
Tel:  404-525-8200
Fax:  404-525-1173

31

# EXHIBIT 1 TO SETTLEMENT AGREEMENT AND RELEASE

## AGREEMENT AND GENERAL RELEASE

THIS AGREEMENT AND GENERAL RELEASE is made and entered into by Plaintiff *[INSERT NAME OF INDIVIDUAL NAMED PLAINTIFF]* (hereinafter "Plaintiff") and Defendants Turkey Valley Farms, LLC and Life-Science Innovations, LLC and (hereinafter collectively referred to as "Turkey Valley Farms and LSI") as of the dates of signature for the parties.

WHEREAS, Plaintiff has asserted certain claims against Turkey Valley Farms and LSI arising out of the employment and termination of employment with Turkey Valley Farms in the form of a lawsuit captioned as *Alma M. Gonzalez, Sherman D. Spradley, and Ahmed A. Duale v. Turkey Valley Farms, LLC and Life-Science Innovations, LLC,* Case No. 0:14-cv-4192-HB, U.S. District Court for the District of Minnesota (the "Lawsuit");

WHEREAS, Turkey Valley Farms and LSI have denied the Claims in the Lawsuit and deny that they are liable to Plaintiff;

WHEREAS, the undersigned Plaintiff, having agreed to the terms of the Settlement Agreement and Release in the Lawsuit;

WHEREAS, under paragraph 10.f. of the Settlement Agreement and Release in the Lawsuit, Plaintiff has agreed in exchange for an additional Enhancement Award to execute and furnish to Turkey Valley Farms and LSI a general release of all claims, in addition to said Settlement Agreement and Release, to fully compromise and settle all existing and potential disputes Plaintiff may have and to avoid the expense of further litigation;

NOW, THEREFORE, in consideration of the promises and covenants hereinafter contained, and intending to be legally bound hereby, Plaintiff and Turkey Valley Farms and LSI agree as follows:

1. **Consideration.** In consideration of Plaintiff's execution and delivery to Turkey Valley Farms and LSI of this Agreement and General Release and the Settlement Agreement and Release, and for Plaintiff's compliance with the terms of both Agreements, Turkey Valley Farms and LSI agree to pay Plaintiff the Enhancement Award of up to $1,000.00, as approved and defined by the Court, in the manner and on the schedule prescribed in the Settlement Agreement and Release. The Parties confirm that a Form 1099 will be issued to Plaintiff for the Enhancement Award. Plaintiff agrees that if it is determined that any federal or state income or payroll taxes, including FUTA or FICA, should have been paid by Turkey Valley Farms and LSI on said Enhancement Award, Plaintiff will indemnify and hold Turkey Valley Farms and LSI harmless from any and all tax liability they or Plaintiff incurs as to such payment, including interest and/or penalties.

1 of 5

2.     **No Consideration Absent Execution of this Agreement.**   Plaintiff understands and agrees that Plaintiff would not receive the monies and/or benefits specified in paragraph "1" above, except for Plaintiff's execution of this Agreement and General Release and the fulfillment of the promises contained herein.

3.     **General Release of All Claims.**   Plaintiff knowingly and voluntarily releases and forever discharges the "Releasees," defined as follows: (i) Turkey Valley Farms, LLC and Life-Science Innovations, LLC; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Turkey Valley Farms, LLC or Life-Science Innovations, LLC and any staffing company that employed any of the temporary workers in the Settlement Class; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, attorney, or employee benefit or welfare program or plan (including the administrators, trustee, fiduciaries, and insurers of such program or plan) of an entity referenced in or encompassed by subsection (i) or (ii) hereof, of and from any and all claims, known and unknown, asserted or unasserted, which the Plaintiff has or may have against Releasees as of the date of execution of this Agreement and General Release, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964 ("Title VII");
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (as modified below);
- The Immigration Reform and Control Act ("IRCA");
- The Americans with Disabilities Act of 1990 and amendments ("ADAAA");
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act ("WARN");
- The Fair Credit Reporting Act ("FRCA");
- The Family and Medical Leave Act ("FMLA");
- The Equal Pay Act ("EPA");
- The Fair Labor Standards Act ("FLSA");
- The Genetic Information Nondiscrimination Act of 2008 ("GINA");
- The Minnesota Human Rights Act, Minn. Stat. § 363A.01, *et seq.* ("MHRA");
- Minnesota's wage-hour and wage payment laws;
- Minnesota's Whistleblower Act, Minn. Stat. § 181.932 ("MWA");
- Retaliation under Minn. Stat. § 176.82;
- Laws enacted under the Minnesota Women's Economic Security Act of 2014 ("WESA");
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

and/or any other federal, state, city, or local human rights, civil rights, wage-hour, wage-payment, pension, employee benefits, labor or other laws, rules, regulations and/or guidelines,

constitutions, ordinances, public policy, contract or tort laws, or any other claim for alleged breach of contract, defamation, employment discrimination, sexual or other harassment, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress, any claim arising under the common law, or any other action, based upon any conduct occurring up to and including the date of the complete execution of this Agreement and General Release, and any claim for costs, fees, or other expenses including attorneys' fees incurred in any such matters.  Plaintiff hereby agrees that the Release set forth in this paragraph is a general release and waives and assumes the risk of any and all claims for damages which exist as of this date but of which Plaintiff does not know, whether through ignorance, error, oversight, negligence, or otherwise, and which, if known, would materially affect her decision to enter this Release.

If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Turkey Valley Farms and LSI or any other Releasee identified in this Agreement is a party.

Plaintiff is not waiving any rights Plaintiff may have to: (i) Plaintiff's own vested accrued employee benefits under Turkey Valley Farms' health, welfare, or retirement benefit plans as of the date Plaintiff signs this Release; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; (iv) enforce this Agreement; and/or (v) challenge the validity of this Agreement.

4. **Acknowledgments and Affirmations.**

Plaintiff affirms that Plaintiff has not filed, caused to be filed, or presently is a party to any claim against Turkey Valley Farms and/or LSI, except the Lawsuit. Should any other claim be filed, Plaintiff agrees that Plaintiff will not accept any relief or recovery therefrom.

Plaintiff affirms that Plaintiff has been granted any leave to which Plaintiff was entitled under the Family and Medical Leave Act or related state or local leave or disability accommodation laws.

Plaintiff further affirms that Plaintiff has no known workplace injuries or occupational diseases other than injuries that have been reported in pending or past workers compensation claims.

Plaintiff also affirms that Plaintiff has not divulged any proprietary or confidential information of Turkey Valley Farms and LSI and will continue to maintain the confidentiality of such information consistent with Turkey Valley Farms and LSI's policies and Plaintiff's agreement(s) with Turkey Valley Farms and LSI and/or common law.

Plaintiff further affirms that Plaintiff has not been retaliated against for reporting

any allegations of wrongdoing by Turkey Valley Farms and LSI or its officers, including any allegations of corporate fraud.   Both Parties acknowledge that this Agreement does not limit either party's right, where applicable, to file or participate in an investigative proceeding of any federal, state or local governmental agency.   To the extent permitted by law, Plaintiff agrees that if such an administrative claim is made, Plaintiff shall not be entitled to recover any individual monetary relief or other individual remedies.

Plaintiff affirms that all of Turkey Valley Farms and/or LSI's decisions regarding Plaintiff's pay and benefits through the date of Plaintiff's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

5.   **Governing Law and Interpretation.**   This Agreement and General Release shall be governed and conformed in accordance with the laws of the State of Minnesota, without regard to its choice of law principles.   In the event of a breach of any provision of this Agreement and General Release, either party may institute an action specifically to enforce any term or terms of this Agreement and General Release and/or to seek any damages for breach. Should any provision of this Agreement and General Release be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement and General Release in full force and effect.

6.   **Nonadmission of Wrongdoing.**   The Parties agree that neither this Agreement and General Release nor the furnishing of the consideration for this Agreement and General Release shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

7.   **Amendment**.   This Agreement and General Release may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement and General Release.

8.   **Entire Agreement.**   This Agreement and General Release together with the Settlement Agreement and Release in the Lawsuit set forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties. Plaintiff acknowledges that Plaintiff has not relied on any representations, promises, or agreements of any kind made to Plaintiff in connection with Plaintiff's decision to accept this Agreement and General Release, except for those set forth in this Agreement and General Release and in the Settlement Agreement and Release in the Lawsuit.

**PLAINTIFF ACKNOWLEDGES THAT TURKEY VALLEY FARMS AND LSI HAVE GIVEN PLAINTIFF TWENTY-ONE (21) CALENDAR DAYS FROM THE DATE PLAINTIFF RECEIVED THIS AGREEMENT, NOT COUNTING THE DAY UPON WHICH PLAINTIFF RECEIVED IT, TO CONSIDER WHETHER PLAINTIFF WISHES TO SIGN IT AND WAIVE HER CLAIMS, INCLUDING A CLAIM UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") CLAIMS, AS SET FORTH ABOVE. PLAINTIFF ACKNOWLEDGES THAT IF PLAINTIFF SIGNS THE**

AGREEMENT BEFORE THE END OF THE TWENTY-ONE (21) DAY PERIOD, IT IS BECAUSE PLAINTIFF KNOWINGLY AND VOLUNTARILY DECIDED ON HER OWN TO DO SO, AND BECAUSE PLAINTIFF HAD SUFFICIENT TIME TO DECIDE WHETHER TO SIGN IT.    PLAINTIFF ALSO CONFIRMS THAT PLAINTIFF IS REPRESENTED BY COUNSEL AND THAT PLAINTIFF HAS CONSULTED WITH COUNSEL PRIOR TO PLAINTIFF'S SIGNING OF THIS AGREEMENT AND GENERAL RELEASE.

PLAINTIFF MAY REVOKE THE WAIVER OF PLAINTIFF'S ADEA CLAIMS FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY PLAINTIFF SIGNS THIS AGREEMENT AND GENERAL RELEASE.

TO EFFECTIVELY REVOKE OR RESCIND, THE REVOCATION OR RESCISSION MUST BE IN WRITING AND MUST BE SUBMITTED, IN WRITING, WITHIN THE SEVEN (7) DAY PERIOD TO DALE OWENS AT JACKSON LEWIS, P.C., 1155 PEACHTREE STREET NE, SUITE 1000, ATLANTA, GEORGIA 30309-3600 AND MUST STATE, "I HEREBY REVOKE THE WAIVER OF MY ADEA CLAIMS." THE REVOCATION MUST BE PERSONALLY DELIVERED TO DALE OWENS OR HIS DESIGNEE, OR MAILED TO DALE OWENS AT THE ABOVE ADDRESS AND POSTMARKED WITHIN SEVEN (7) CALENDAR DAYS AFTER PLAINTIFF SIGNS THIS AGREEMENT AND GENERAL RELEASE.    ANY SUCH TIMELY REVOCATION UNDER THIS PARAGRAPH REVOKES ONLY PLAINTIFF'S ADEA WAIVER AND WILL NOT IMPACT THE VALIDITY OF THE REMAINDER OF PLAINTIFFS' GENERAL RELEASE OF CLAIMS, BUT WILL EXCUSE TURKEY VALLEY FARMS AND LSI FROM ANY OBLIGATION TO PAY THE ENHANCEMENT AWARD REFERENCED ABOVE.

PLAINTIFF THEREFORE AGREES THAT PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS PLAINTIFF HAS OR MIGHT HAVE AGAINST RELEASEES, THROUGH THE DATE PLAINTIFF SIGNS THIS AGREEMENT.

Plaintiff knowingly and voluntarily signs this Agreement and General Release as of the date set forth below:

*[INSERT NAME OF INDIVIDUAL NAMED PLAINTIFF]*

*Sherman D. Spradley*  —  9-1-15

TURKEY VALLEY FARMS, LLC

By:_____

5 of 6

Date:_____


LIFE-SCIENCE INNOVATIONS, LLC


By:_____


Date:_____

# BANDHIG 1 HESHIISKA XALKA IYO FASAXA

## HESHIISKA IYO FASAXA GUUD

HESHIISKAN IYO FASAXA GUUD waxa sameeyey oo galay Dhibbanaha *[GALI MAGACA QOFKA KU MAGACAABAN DHIBBANE]* halkan wixii ka dambeeya ("Dhibbane") iyo Eedaysanayaasha Turkey Valley Farms, LLC iyo Life-Science Innovations, LLC oo (halkan wixii ka dambeeya si wada-jir ah loo tixraaci doono "Turkey Valley Farms and LSI") laga bilaabo taariikhaha saxeexa dhinacyada.

HALKA, Dhibbanuhu wuxuu caddeeyey cabashooyinka qaar ka dhan ah Turkey Valley Farms iyo LSI taasi oo ka dhalatay shaqada taas ka eriga shaqada Turkey Valley Farms iyada oo ah qaab dacwad ay ku qoran yihiin *Alma M. Gonzalez, Sherman D. Spradley, iyo Ahmed A. Dualev. Turkey Valley Farms, LLC iyo Life-Science Innovations, LLC,* Lambarka Kiiska 0:14-cv-4192-HB, Maxkamadda Degmada ee Maraykanka ee Degmada Minnesota ("Dacwadda");

HALKA, Turkey Valley Farms iyo LSI ay beeniyeen Sheegashooyinka Dacwadda oo ay diideen inuu wax ku leeyahay Dhibbanuhu;

HALKA, Dhibbanaha hoos ku saxeexan, oo lagula heshiinayo shuruudaha Heshiiska Xalka iyo Fasaxa ee Dacwadda;

HALKA, halka ka hoosaysa baaragaraafka 10.f. ee Heshiiska Xalka iyo Fasaxa ee Dacwadda, Dhibbanuhu uu oggolaaday isaga oo dhaafsanaya Abaalmarin Xoojin oo dheeraad ah inuu fuliyo oo uu siiyo Turkey Valley Farms iyo LSI fasaxa guud ee dhammaan sheegashooyinka, marka lagu daro Heshiiska Xalka iyo Fasaxa la sheegay, uu si buuxda tanaasul uga sameeyo una xalliyo dhammaan murannada jira iyo kuwa soo socda ee Dhibbanuhu uu qabi karo iyo inuu ka dheeraado dhibaatada dacwad kale;

HADDABA, IMIKA, marka la eego ballanqaadyada iyo axdiyga halkan waxa ka dambeeya kujira, oo loogu talogalayo inuu sharci ahaan dhaqangalo, Dhibbanaha iyo Turkey Valley Farms iyo LSI waxay ku heshiiyeen waxa soo socda:

1.  **Tixgalin.** Iyada oo la tixgalinayo fulinta iyo siinta Dhibbanaha ee Turkey Valley Farms iyo LSI ee Heshiiskan iyo Fasaxa Guud iyo Heshiiska Xalka iyo Fasaxa, iyo ku dhaqanka Dhibbanaha shuruudaha labada Heshiisba, Turkey Valley Farms iyo LSI waxay oggol yihiin inay siiyaan Dhibbanaha Abaalmarinta Xoojinta oo gaadhaysa $1,000.00, sida ay ansixisay kuna qeexday Maxkamaddu, qaabka iyo jadwalka ku qoran Heshiiska Xalka iyo Fasaxa. Dhinacyadu waxay xaqiijiyeen in Foom 1099 la siin doono Dhibbanaha Abaalmarinta Xoojinta darteed. Dhibbanuhu wuxuu oggolaaday in haddii la go'aamiyo in wixii cashuur dakhli ee fadaraal ama gobol ama cashuuraha mushaharka, oo ay kujirto FUTA ama FICA, ay tahay inay ka bixiyaan Turkey Valley Farms iyo LSI Abaalmarinta Xoojinta ee la sheegay, Dhibbanuhu uu magdhabi doono oo Turkey Valley Farms iyo LSI aanu u qabsanayn wixii iyo

dhammaan cashuuraha lagu leeyahay iyaga ama Dhibbanaha lacagtan la siiyey darteed, oo ay kujiraan dulsaarka iyo/ama ganaaxyada.

2. **Wax Tixgalin ah Ma Maqna Fulinta Heshiiskan.** Dhibbanuhu waa fahamsan yahay oo oggol yahay in Dhibanuhu aanu heli doonin lacagaha iyo/ama dheefaha lagu sheegay baaragaraafka "1" ee sare, marka laga reebo fulinta Dhibbanaha ee Heshiiskan iyo Fasaxa Guud iyo oofinta ballanqaadyada halkan lagu sameeyey.

3. **Fasaxa Guud ee Sheegashooyinka oo Dhan.** Dhibbanuhu isaga oo og iyo si iskaa ah wuxuu uga fasaxayaa waligoodna aanu u qabsanayn "La-Fasaxayaasha," sida soo socda: (i) Turkey Valley Farms, LLC iyo Life-Science Innovations, LLC; (ii) wixii jira amah ore u jira ee farac, shirkadda wayn, cid ay wada shaqeeyaan, cid la xidhiidha, dhaxle, waax, ama qayb ah Turkey Valley Farms, LLC ama Life-Science Innovations, LLC iyo shirkadda shaqaale qorista taasi oo shaqaalaysay cid kamid ah shaqaalaha kumeel gaadhka ah ee Qaybta Xalka; iyo (ii) jooga ama hore ee ah dheefta shaqaalaha ama barnaamijka ama qorshaha daryeelka sarkaal, agaasime, qansnaji, wakiil, shaqaale, saamile, matale, la-taliye, caymiye, qareen, ama shaqaale (oo ay kujiraan maamulayaasha, qasnajiga, amaana-hayeyaal, iyo caymiyayaal ee barnaamijkan ama qorshahan) ee cid lagu tixraacay ama sheegay qayb-hoosaadda (i) ama (ii) ee halkan, ee iyo wixii iyo dhammaan sheegashooyinka, la og yahay iyo aan la ogayn, la caddeeyey ama aan la caddayn, kuwaasi oo Dhibbanuhu uu dhan kaga ahaa La-Fasaxayaasha taariikhda fulinta Heshiiskan iyo Fasaxa Guud, oo ay kamid yihiin, laakiin aan ku ekayn, wixii xadgudub la sheegayo ee:

- Lahaanshaha VII ee Xeerka Xuquuqda Rayidka ee 1964 ("Lahaanshaha VII")'
- Qaybaha 1981 ilaa 1988 ee Lahaanshaha 42 Koodhka Maraykanka;
- Xeerka Ammaanka Dakhliga Hawlgabka Shaqaalaha ("ERISA") (sida hoos lagu beddelay);
- Xeerka Dib-u-habaynta Socdaalka iyo Xakamaynta ("IRCA");
- Xeerka Dadka Maraykanka ee Naafada ah ee 1990 iyo wax-ka-beddellada ("ADAAA");
- Xeerka Takoorka Da'da Shaqaalaynta ee 1967 ("ADEA");
- Xeerka La-qabsiga Shaqaalhaa iyo Ogaysiiska Dib-u-tabobarka ("WARN");
- Xeerka Tabinta Dhibcaha Xaqa ah ("FRCA");
- Xeerka Fasaxa Qoyska iyo Caafimaadka ("FMLA");
- Xeerka Mushahar Isku Mid ah  ("EPA");\
- Xeerka Heerarka Shaqaale Xaq ah ("FLSA");
- Xeerka Takoor La'aanta Macluumaadka Hiddo-sidka ee 2008 ("GINA");
- Xeerka Xuquuqda Aadanaha Minnesota, Minn. Stat. § 363A.01, *et seq.* ("MHRA");
- Shuruucda mushqaayadda saacadda iyo bixinta mushqaayadda;
- Xeerka Kashifaadda Minnesota, Minn. Stat. § 181.932 ("MWA");
- Aargoosiga sida uu dhigayo  Minn. Stat. § 176.82;
- Shuruuca la ansixiyey sida uu dhigayo Xeerka Sugnaanta Dhaqaalaha Haweenka Minnesota ee 2014 ("WESA");
- wixii kale ee ah sharci, xukun, xeer ee fadaraal, gobol ama deegaan;
- wixii siyaasad, heshiis, xaalmarin, ama sharciga komon lowga ee dadwayne; ama

- wixii sal u ah ka soo kabsiga kharashaadka, khidmadaha, ama kharashyada kale oo ay kamid yihiin khidmadda qareenka ee arrimahan dartood la galay.

iyo/ama wixii kale ee ah xuquuqda aadanaha ee fadaraal, gobol, magaalo, ama deegaan, xuquuq rayid, mushqaayadda saacadda, bixinta mushqaadda, lacagta hawlgabka, dheefaha shaqaalaha, shaqaalaha ama shuruuc, xukuno, xeerar iyo/ama tilmaamo kale, dastuur, sharciga magaalada, siyaasadda dadwaynaha, shuruucda heshiiska ama xaalmarinta, iyo wixii kale ee cabasho u sugnaaday jabinta heshiis, ka been-abuur, takoor shaqaale, galmo ama dhibaatayn kale, aargoosi, si khaldan u eri, eri dahsoon, xanuun iyo dhibaatoobid, dhibaatoobid maskaxeed, u gaysasho saxariir niyadeed oo ulakac ah iyo/ama dayac ah, wixii sheegashooyin ka imanaya sharciga komon lowga, iyo wixii kale ee ficil ah, ee kusalaysan wixii habdhaqan dhacaya oo gaadhsiisan oo ay kamid yihiin taariikhda fulinta buuxda ee Heshiiskan iyo Fasaxan Guud, iyo wixii kale ah sheegashooyin kharashaadka, khidmadaha, ama kharashka kale oo ay kamid tahay lacagta la siiyey qareenka wax kamid ah arrimahan. Dhibbanuhu halkan wuxuu ku oggolaaday Fasaxa lagu sheegay baaragaraafkan uu yahay fasax guud iyo uuna iska dhaafayo oo qaadayo halista waxyeelada wixii iyo dhammaan sheegashooyinka kuwaasi oo jira taariikhdan laakiin Dhibbanuhu aanu ogayn, ha ahaato inuu jaahil yahay, khalad jira, ilduuf, dayac, ama wax kale, kaasi oona, haddii la ogaado, si maaddi ah u saamayn lahaa go'aankiisa inuu oggolaado Fasaxan.

Haddii sheegasho ah ayna ay ku xidhnayn fasax, ilaa xadka sharcigu oggol yahay, Dhibbanuhu wuxuu dhaafayaa wixii xuquuq ama awood ku noqon lahaa koox ama wakiil tallaabo wada-jirta ama haddii uu kaga qaybqaadan lahaa koox guud ama muctarif ah, tallaabo wada-jirta ama dhinac dadka badan ka kooban ama dacwad kusalaysan sheegasho noocan ah taasi oo Turkey Valley Farms iyo LSI ama cid kale oo la Fasaxe ah oo lagu aqoonsaday Heshiiskan inay dhinac tahay.

Dhibbanuhu ma dhaafayo wixii xuquuq Dhibbanuhu yeelan karo: (i) dheefaha uu shaqaale ahaan Dhibbanuhu leeyahay marka la eego qorshayaasha dheefta caafimaadka, daryeelka, ama hawlgabka Turkey Valley Farms ee taariikhda Dhibbanuhu uu saxeexay Fasaxan' (ii) dheefaha iyo/ama xaqa raadinta dheefaha sida uu dhigayo sharciga khuseeya ee magdhawga shaqaalaha iyo/ama magdhawga shaqo la'aanta; (ii) wadista sheegashooyin sharci ahaan aan lagu dhaafi karin saxeexista Heshiiskan; (ii) fuliyo Heshiiskan; iyo/ama (v) loolan galiyo sharcinimada Heshiiskan.

4.   **<u>Qiraallada iyo Xaqiijinaha.</u>**

Dhibbanuhu wuxuu xaqiijinayaa in Dhibbanuhu aanu fayl garayn, sabab u noqon in la fayl gareeyo, ama wakhtigan uu yahay dhinac sheegasho ka dhan ah  Turkey Valley Farms iyo/ama LSI, marka laga tago Dacwadda. Haddii sheegasho kale la fayl garaysto, Dhibbanuhu wuxuu oggol yahay in Dhibbanuhu aanu aqbali doonin wixii laga helayo halkaas.

Dhibbanuhu wuxuu xaqiijinayaa in Dhibbanaha la siiyey wixii fasax uu Dhibbanuhu uu xaq u yeeshay sida uu dhigayo Xeerka Fasaxa Qoyska iyo Caafimaadka ama shuruucda kale ee la xidhiidha ee fasaxa gobolka ama deegaanka ama naafada.

Dhibbanuhu sidoo kale wuxuu xaqiijiyey in Dhibbanuhu aanay jirin  dhaawacyo goobta shaqada ah oo la og yahay ama cudurrada shaqada ah wixii ahaan ahayn dhaawacyo lagu

tabiyey sugitaan ama sheegashooyinka magdhawga shaqaale hore.

Dhibbanuhu sidoo kale wuxuu xaqiijinayaa in Dhibbanuhu aanu shaacin wax mulkiyad ama macluumaad sir ah oo ay leedahay Turkey Valley Farms iyo LSI uuna sii wadi doono inuu ilaaliyo qarsoodinimada macluumaadkan qaaban waafaqsan siyaasadaha Turkey Valley Farms iyo LSI iyo heshiiska Dhibbanuhu la galay Turkey Valley Farms iyo LSI iyo/ama sharciga komon lowga.

Dhibbanuhu  wuxuu sidoo kale xaqiijinayaa in Dhibbanaan looga aargoosanayn tabinta wixii eedaymo ah inay khalad sameeyeen Turkey Valley Farms iyo LSI ama saraakiisheedu, oo ay kujirto wixii eedaymo ah ee khayaanada shirkadda.  Labada dhinacba waxay qirayaan in Heshiiskan aanu xaddidayn  xaqa dhinacnaba, halka khusaysa, inuu fayl garaysoto ama kaqaybqaato dacwad baadhis ee hay'ad dawladeed oo fadaraal, gobol ama deegaan. Ilaa xadka uu sharcigu oggol yahay, Dhibbanuhu wuxuu oggol yahay in haddii sheegashadan maamul ee noocan ah la sameeyo, Dhibbanuhu aanu xaq u lahayn inuu helo wax magdhaw lacag ah ama magdhawyo kale oo gaar ah.

Dhibbanuhu wuxuu xaqiijinayaa in dhammaan go'aamada Turkey Valley Farms iyo LSI ee la xidhiidha mushaharka iyo dheefaha Dhibbanaha ilaa taariikhda fulinta Dhibbanaha ee Heshiiskan ayna ahayn takoor kusalaysan da', naafo, qoomiyad, jinsi, diin, waddanka qofku u dhashay ama kala-soocni kale oo sharcigu ilaaliyey.

5.     **Sharciga Xumada iyo Fasiraadda.**  Heshiiskan iyo Fasaxa Guud waa inuu xukumo oonu waafaqsan yahay shuruucda Gobolka Minnesota, iyada oon la eegin doorashadiisa mabaadii'da sharciga. Haddii ay dhacdo jabinta wax kamid ah ballanta Heshiiskan iyo Fasaxa Guud, dhinacyadu waxa dhici karta inay bilaabaan tallaabo gaar ahaan si ay u fuliyaan wixii shuruudo ahaa ee Heshiiskan iyo Fasaxan Guud iyo/ama inuu raadsato magdhaw jabinta sharciga dartii. Haddii wax kamid ah Heshiiskan iyo Fasaxa Guud la caddeeyo inuu yahay sharci darro ama qaar aanay fulin karin maxkamad ee xukaamta aqoonta u leh oo aan la beddeli karin si loo fulin karo, marka laga reebo luuqadda fasaxa guud, waxyaalahan noocan waxay isla markaaba noqonayaan wax aan sharci ahaan soconayn, iyada oo wixii ka soo hadhay Heshiishka iyo Fasaxa Guud uu si buuxda u dhaqangalayo loona fulinayo.

6.     **Oggolaansho la'aanta Khalad Samaynta.**  Dhinacyada waxay ku heshiiyeen in Heshiiskan iyo Fasaxa Guud iyo oggolaanshaha tixgalinta Heshiiskan iyo Fasaxa Guud aan loo qaadan ama tarjuman mar kasta iyo ujeedo kasta oggolaansho la Fasaxuhu inuu khalad sameeyey ama caddaynta wixii masuuliyad ah ama habdhaqan aan sharci ahayn noocu doono ha ahaadee.

7.     **Wax-ka-beddelka.**  Heshiiskan iyo Fasaxa Guud waxa dhici karta inaan inaan wax laga beddelin ama beddelin laga reebo marka qoraal lagu codsado labada Dhinacna saxeexaan halkaasi oo tixraac gaar ah lagu samaynayo Heshiishan iyo Fasaxa Guud.

8.     **Heshiiska oo Idil.** Heshiiskan iyo Fasaxa Guud oo lagu daro Heshiiska Xalka iyo Fasaxa ee Dacwadda wuxuu sheegayaa heshiiska idil ee u dhexeeya Dhinacyadan, wuxuuna si buuxda u muquuninayaa wixii heshiisyo ama isfahamyo dhex maray Dhinacyada.

4 ee 6

Dhibbanuhu wuxuu qirayaa in Dhibbanuhu aanu isku hallaynayn wixii mataalado, ballanqaadyo, ama heshiisyo ah nooc kasta ee loo sameeyey Dhibbanaha marka la eego go'aanka Dhibbanaha ee inuu aqbalo Heshiiskan iyo Fasaxa Guud, marka laga reebo kuwa lagu sheegay Heshiiskan iyo Fasaxa Guud iyo Heshiiska Xalka iyo Fasaxa ee Dacwadda.

DHIBBANUHU WUXUU QIYAYAA IN TURKEY VALLEY FARMS AND LSI AY SIISAY DHIBBANAHA KOW IYO LABAATAN (21) MAALMOOD LAGA BILAABO TAARIIKHDA DHIBBANUHU UU HELAY HESHIISKAN, IYADA OON TIRADA LAGU DAAYN MAALINTA DHIBBANUHU HELAY, INUU EEGO HADDII DHIBBANUHU UU RABO INUU SAXEEXO OO UU DHAAFO SHEEGASHOOYINKIISA, OO AY KUJIRTO SHEEGASHO TILMAAMAYSA SHEEGASHOOYINKA XEERKA TAKOORKA DA'DA EE SHAQAALAHA ("ADEA"), SIDA SARE KU CAD. DHIBBANUHU WUXUU QIRAYAA IN HADDII DHIBBANUHU UU SAXEEXO HESHIISKAN KAHO DHAMMAADKA MUDDADA KOW IYO LABAATANKA (21) MAALMOOD, AY SABAB U TAHAY DHIBBANAHA OO ISAGA MAANKIISA QABA CIDINA KHASBAYN GO'AANSADAY INUU SIDAAS YEELO, IYO DHIBBANAHA OO HAYSTAY WAKHTI KU FILAN OO UU KU GO'AAMIYO INUU SAXEEXO IYO IN KALE.  DHIBBANUHU SIDOO KLAE WUXUU XAQIIJIYEY IN DHIBBANAHA UU MATALAYO LOOYAR OO DHIBBANUHU UU LA TASHADAY LOOYARKA KAHOR SAXEEXA DHIBBAHA EE HESHIISKAN IYO FASAXA GUUD.

DHIBBANUHU WAXA DHICI KARTA INUU KA LAABTO DHAAFISTA SHEEGASHOOYINKA ADEA EE DHIBBANAHA MUDDO DHAN TODDOBA (7) MAALMOOD KADIB MAALINTA DHIBBANUHU SAXEEXO HESHIISKAN IYO FASAXA GUUD.

SI DHAQANGAL LOOGA LAABTO, KA LAABASHADU WAA INAY QORAAL AHAATO WAANA IN LOOGU GUDBIYO QORAAL, TODDOBA (7) MAALMOOD GUDAHOOD DALE OWENS OO JOOGA JACKSON LEWIS, P.C., 1155 PEACHTREE STREET NE, SUITE 1000, ATLANTA, GEORGIA 30309-3600 WAANA INAY DHAHAYHSO "WAXAAN HALKAN KAGA LAABANAYAA DHAAFISTA SHEEGASHOOYINKA ADEA." KA LAABASHADA WAA INAY SHAKHSI AHAAN WAA SI KHAAS AH LOOGU GEEYO DALE OWENS AMA WAKIILKIISA, AMA BOOSTA LOO DHIGO DALE OWENS CINWAANKA SARE LAGU SHAABADEEYO TODDOBADA (7) MAALMOOD GUDAHOOD KADIB MARKIA DHIBBANUHU UU SAXEEXAY HESHIISKAN IYO FASAXA GUUD. WIXII KA LAABASHO WAKHTIGII KU HABBOONAA AH SIDA BAARAGARAAFKAN DHIGAYO WUXUU KALIYA KHUSEEYAA DHAAFISTA DHIBBANAHA EE ADEA SAAMAYNNA KU YAALAN MAAYO SAXSANAANTA INTA HADHAY EE FASAXA GUUD EE EE SHEEGASHOOYINKA EE DHIBBANAYAASHA, LAAKIIN KA CAFIN DOONAA TURKEY VALLEY FARMS IYO LSI WIXII WAAJIB KA SAARNAA BIXINTA LACAGTA ABAALMARINTA XOOJINTA EE SARE LAGU SHEEGAY.

HADDABA DHIBBANUHU WUXUU OGGOLAADAY IN DHIBBANUHU SI XOR AH OO MAANKA QABTA, IYO KADIB KA FIIRSI, GALAYO HESHIISKAN LOOGU TALOGALAY DHAAFSTA, XALKA IYO FASAXA DHAMMAAN

**SHEEGASHOOYINKA UU DHIBBANUHU U  HAYSTO AMA UU KAGA DHAN AHAAN KARAYO FASAXA, ILAA TAARIIKHDA DHIBBANUHU UU SAXEEXAY HESHIISKAN.**

Dhibbanuhu wuxuu si maan qabta oo iskaa ah u saxeexay Heshiiskan iyo Fasaxa Guud taariikhda hoos ku qoran:

*[GALI MAGACA DHIBBANE LA MAGACAABAY]*

Ahmed Duale 8-30-15

TURKEY VALLEY FARMS, LLC

Falay:_____

Taariikhda:_____

LIFE-SCIENCE INNOVATIONS, LLC

Falay:_____

Taariikhda:_____

6 ee 6

# PRUEBA DOCUMENTAL 1 DEL ACUERDO DE COMPENSACIÓN Y EXENCIÓN

## ACUERDO Y EXENCIÓN GENERAL

ESTE ACUERDO Y EXENCIÓN GENERAL se hizo y fue presentado por el Demandante *[INSERTE EL NOMBRE DEL DEMANDANTE MENCIONADO INDIVUDUAL]* (en lo sucesivo "Demandante") y los Demandados, Turkey Valley Farms, LLC y Life-Science Innovations, LLC y (en lo sucesivo colectivamente referido como "Turkey Valley Farms y LSI") desde las fechas de firma de las Partes.

CONSIDERANDO, que el Demandante ha confirmado ciertos reclamos en contra de Turkey Valley Farms y LSI surgidos del empleo y finalización de la relación laboral con Turkey Valley Farms en la forma de una demanda titulada *Alma M. Gonzalez, Sherman D. Spradley y Ahmed A. Duale contra Turkey Valley Farms, LLC y Life-Science Innovations, LLC,* N° de Caso 0:14-cv-4192-HB, Tribunal de Distrito de los Estados Unidos para el Distrito de Minnesota (la "Demanda");

CONSIDERANDO, que Turkey Valley Farms y LSI han negado los reclamos en la Demanda y niegan tener responsabilidad con el Demandante;

CONSIDERANDO, que el Demandante que suscribe, ha aceptado los términos del Acuerdo de Compensación y Exención en la Demanda;

CONSIDERANDO, que según el párrafo 10.f del Acuerdo de Compensación y Exención en la Demanda, el Demandante ha acordado, en intercambio por una Indemnización Aumentada adicional para ejecutar y proporcionarle a Turkey Valley Farms y LSI una renuncia general de todos los reclamos, además de dicho Acuerdo de Compensación y Exención, comprometerse totalmente a saldar todas las disputas existentes y potenciales que el Demandante pueda tener para evitar el gasto de un litigio posterior;

POR TANTO, en consideración de las promesas y convenios contenidos a continuación, y con la intención de estar legalmente vinculados, el Demandante y Turkey Valley Farms y LSI acuerdan lo siguiente:

1. **Consideración.** En consideración de la ejecución y envío por parte del Demandante a Turkey Valley Farms y LSI de este Acuerdo y Exención General y el Acuerdo de Compensación y Exención, y para el cumplimiento del Demandante con los términos de ambos Acuerdos, Turkey Valley Farms y LSI acuerdan pagar al Demandante la Indemnización Aumentada hasta por $1,000.00, según lo aprobado y definido por el Tribunal, en la forma y cronograma prescrito en el Acuerdo de Compensación y Exención. Las Partes confirman que el Formulario 1099 se entregará al Demandante para la Indemnización Aumentada. El Demandante acuerda que si se determina que cualquier ingreso estatal o federal o impuestos de nómina, incluyendo FUTA o FICA, deben haberse pagado por Turkey Valley Farms y LSI por dicha Indemnización Aumentada, el Demandante indemnizará y mantendrá a Turkey Valley Farms y

LSI libres de cualquier y toda responsabilidad fiscal en la que ellos o el Demandante incurra por dicho pago, incluyendo intereses y/o sanciones.

2. **Contraprestación sujeta al cumplimiento de este Acuerdo.** El Demandante entiende y acepta que el Demandante no recibiría el dinero y/o beneficios especificados arriba en el párrafo "1", excepto por la ejecución por parte del Demandante de este Acuerdo y Exención General y el cumplimiento de las promesas aquí contenidas.

3. **Renuncia General de todos los Reclamos.** El demandante consciente y voluntariamente libera y descarga de forma definitiva a los "Exonerados", definidos a continuación: (i) Turkey Valley Farms LLC y Life-Science Innovations LLC; (ii) cualquier subsidiaria, compañía matriz, organismo afiliado, organismo relacionado, sucesor, cesionario o división actual o antigua de Turkey Valley Farms LLC y Life-Science Innovations LLC, así como cualquier compañía de empleos que haya contratado a alguno de los trabajadores temporales en el Colectivo del Acuerdo; y (iii) cualquier funcionario, director, fiduciario, agente, empleado, accionista, representante, asesor, asegurador, abogado o programa o plan de beneficio de empleado o bienestar (incluidos los administradores, fideicomisario, fiduciarios y aseguradores de dicho programa o plan) actual o antiguo de un organismo mencionado en o incluido en la subsección (i), (ii), o (iii) del presente documento, de y desde cualquiera y todos los reclamos, conocido o desconocido, afirmado o no afirmado, que el Demandante tenga o pueda tener contra los Exonerados a partir de la fecha de ejecución de este Acuerdo y Exención General, que incluye, sin limitarse a, cualquier presunta violación de:

- Título VII de la Ley de Derechos Civiles de 1964 ("Título VII");
- Secciones 1981 hasta 1988 del Título 42 del Código de Estados Unidos;
- La Ley de Seguridad de Ingreso de Jubilación del Empleado de 1974 ("ERISA") (según la modificación a continuación);
- La Ley de Control y Reforma Migratoria ("IRCA");
- La Ley de Estadounidenses con Discapacidades de 1990 y enmiendas ("ADAAA");
- La Ley sobre la Discriminación por la Edad en el Trabajo de 1967 ("ADEA");
- La Ley de Notificación de Ajuste y Reentrenamiento del Trabajador ("WARN");
- La Ley sobre Informe de Crédito Justo ("FRCA");
- La Ley de Permiso Médico y Familiar ("FMLA");
- La Ley de Igualdad de Pago ("EPA");
- La Ley sobre Normas Razonables de Trabajo ("FLSA");
- La Ley sobre la No discriminación por información genética de 2008 ("GINA");
- La Ley de Derechos Humanos de Minnesota, Estatuto de Minnesota § 363A.01, *et seq.* ("MHRA");
- Leyes de Minnesota sobre pago de salario y salario por hora;
- La Ley de Denuncias de Minnesota, Estatuto de Minnesota § 181.932 ("MWA");
- Retaliación según el Estatuto de Minnesota § 176.82;
- Leyes promulgadas conforme con la Ley de Seguridad Económica de las Mujeres de Minnesota de 2014 ("WESA");
- cualquier otra ley, norma, estatuto, regulación u ordenanza local, estatal o federal;
- cualquier política pública, contrato, agravio o ley común; o

- cualquier base para recuperar costos, honorarios u otros gastos, incluidos los honorarios de los abogados, incurridos en este asunto.

Y/o cualquier otro derecho humano local, de la ciudad, estatal o federal, derechos humanos, salario por hora, pago de salario, pensión, beneficios de empleados, laborales u otras leyes, normas, regulaciones y/o directrices, constituciones, ordenanzas, política pública, contrato o derecho delictual, o cualquier otro reclamo por presunto incumplimiento de contrato, difamación, discriminación laboral, sexual u otro acoso, retaliación, finalización indebida de la relación laboral, despido indirecto, dolor y sufrimiento, angustia mental, exposición intencional o negligente de estrés emocional, cualquier reclamo que surja según la ley común, o cualquier otra acción, basada en alguna conducta ocurrida hasta, e incluye la fecha de completa ejecución de este Acuerdo y Exención General, así como cualquier reclamo por costos, honorarios u otros gastos, incluidos los honorarios de abogados, incurridos en dichos asuntos.  Por medio del presente, el Demandante acepta que la Exención establecida en  este párrafo es una exención general, y que renuncia y asume el riesgo de cualquier y todos los reclamos por daños que existan para esta fecha, pero que el Demandante no conoce, sea por ignorancia, error, descuido, negligencia, o de otro modo; y que, si se conoce, afectaría materialmente su decisión aceptar esta Exención.

Si un reclamo no es sujeto a exención, en la medida permitida por la ley, el Demandante renuncia a cualquier derecho o capacidad de ser del colectivo o representante de la acción colectiva o de otro modo participar en cualquier colectivo supuesto o certificado, acción colectiva o multilateral o procedimiento basado en dicho reclamo en el que Turkey Valley Farms y LSI o cualquier otro Exonerado identificado como parte en este Acuerdo.

El Demandante no está renunciando a los derechos que el Demandante tenga a: (i) los beneficios propios de los empleados adquiridos y devengados por el Demandante conforme a los planes de beneficios de jubilación, bienestar o de salud a partir de la fecha en que el Demandante firma esta Exención; (ii) beneficios y/o derecho a buscar beneficios conforme a los estatutos de compensación de los trabajadores y/o compensación de desempleo aplicables; (iii) presentar reclamos a los que por ley no pueden renunciar al firmar este Acuerdo; (iv) aplicar este Acuerdo; y/o (v) poner en duda la validez de este Acuerdo.

4.   **Reconocimientos y Afirmaciones.**

El Demandante afirma que el Demandante no ha presentado, causado la presentación, o actualmente es parte de algún reclamo en contra de Turkey Valley Farms y/o LSI, a excepción de la Demanda. De haber otro reclamo presentado, el Demandante acuerda que el Demandante no aceptará ninguna asistencia o recuperación que de allí surja.

El Demandante afirma que al Demandante no se le ha otorgado ningún permiso al cual tendría derecho según la Ley de Permiso Médico y Familiar o leyes locales o estatales de ajuste por discapacidad o permiso.

El Demandante también afirma que el Demandante no ha tenido lesiones en el sitio de trabajo o enfermedades laborales conocidas distintas a las lesiones que han sido notificadas en los reclamos pendientes o pasados de compensación de trabajadores.

El Demandante también afirma que el Demandante no ha divulgado ninguna información de propiedad o confidencial de Turkey Valley Farms y LSI y continuarán manteniendo la confidencialidad de dicha información consistente con las políticas de Turkey Valley Farms y LSI y el(los) acuerdo(s) del Demandante con Turkey Valley Farms y LSI y/o ley común.

El Demandante también afirma que el Demandante no ha recibido retaliación por notificar cualquier presunción de delitos por parte de Turkey Valley Farms y LSI o sus funcionarios, incluyendo presunto fraude corporativo.   Ambas Partes reconocen que este Acuerdo no limita el derecho de ninguna de las Partes, donde aplique, a presentar o participar en un procedimiento de investigación de cualquier ente gubernamental local, estatal o federal. En la medida permitida por la ley, el Demandante acuerda que si realiza un reclamo administrativo, el Demandante no tendrá derecho a recuperar cualquier compensación monetaria u otros recursos individuales.

El Demandante afirma que todas las decisiones de Turkey Valley Farms y/o LSI, relacionadas con el pago y los beneficios del Demandante en la fecha de la ejecución de este Acuerdo por parte del Demandante, no fueron discriminatorias según la edad, discapacidad, raza, color, sexo, religión, nacionalidad de origen y cualquier otra clasificación protegida por la ley.

     5.    **Ley Aplicable e Interpretación.**  Este Acuerdo y Exención General se regirá y conformará de acuerdo con las leyes del Estado de Minnesota, sin importar su elección de los principios jurídicos.  En caso de  incumplimiento de alguna disposición de este Acuerdo y Exención General, cualquiera de las Partes puede iniciar una acción específicamente para implementar cualquier término o términos de este Acuerdo y Exención General y/o buscar cualquier daño por incumplimiento.  Si alguna disposición de este Acuerdo y Exención General debe declararse ilegal o inválida por algún tribunal de jurisdicción competente y no puede modificarse para hacerla válida, excluyendo el texto de renuncia general, dicha disposición será nula e inválida inmediatamente, dejando el resto de este Acuerdo y Exención General totalmente vigente y efectivo.

     6.    **No admisión de irregularidades.**  Las Partes acuerdan que ni este Acuerdo y Exención General ni el suministro de la consideración para este Acuerdo y Exención General se considerará o interpretará en cualquier momento para cualquier propósito como la admisión por parte de los Exonerados de irregularidades o pruebas de alguna responsabilidad o conducta ilegal de algún tipo.

     7.    **Enmienda.**  Este Acuerdo y Exención General no puede modificarse,

alterarse o cambiarse, excepto por escrito y firmado por ambas Partes donde se haga referencia específica a este Acuerdo y Exención General.

        8.    **Acuerdo Total.** Este Acuerdo y Exención General junto con el Acuerdo de Compensación y Exención en la Demanda establecida en el acuerdo total entre las Partes, reemplaza totalmente cualquier acuerdo o entendimiento previo entre las Partes. El Demandante reconoce que el Demandante no se ha apoyado en ninguna representación, promesa o acuerdos de cualquier tipo hecho al Demandante en conexión con la decisión del Demandante de aceptar este Acuerdo y Exención General, excepto por aquellos establecidos en este Acuerdo y Exención General y en el Acuerdo de Compensación y Exención en la Demanda.

**EL DEMANDANTE RECONOCE QUE TURKEY VALLEY FARMS Y LSI LE HAN DADO AL DEMANDANTE VEINTIÚN (21) DÍAS CALENDARIO A PARTIR DE LA FECHA EN QUE EL DEMANDANTE RECIBE ESTE ACUERDO, SIN CONTAR EL DÍA EN EL QUE EL DEMANDANTE LO RECIBIÓ, PARA CONSIDERAR SI EL DEMANDANTE DESEA FIRMARLO Y RENUNCIAR A SUS RECLAMOS, INCLUYENDO UN RECLAMO DE ACUERDO CON LA LEY SOBRE LA DISCRIMINACIÓN POR LA EDAD EN EL TRABAJO ("ADEA"), SEGÚN LO ESTABLECIDO ANTERIORMENTE. EL DEMANDANTE RECONOCE QUE SI EL DEMANDANTE FIRMA EL ACUERDO ANTES DE QUE FINALICE EL PERÍODO DE VEINTIÚN (21) DÍAS, SE DEBE A QUE EL DEMANDANTE CONSCIENTE Y VOLUNTARIAMENTE DECIDIÓ HACERLO, Y PORQUE EL DEMANDANTE TUVO SUFICIENTE TIEMPO PARA DECIDIR FIRMARLO. EL DEMANDANTE TAMBIÉN CONFIRMA QUE EL DEMANDANTE ESTÁ REPRESENTADO POR UN ASESOR Y QUE EL DEMANDANTE HA CONSULTADO CON EL ASESOR ANTES DE QUE EL DEMANDANTE FIRME ESTE ACUERDO Y EXENCIÓN GENERAL.**

**EL DEMANDANTE PUEDE REVOCAR LA RENUNCIA DEL DEMANDANTE A LOS RECLAMOS ADEA POR UN PERÍODO DE SIETE (7) DÍAS CALENDARIO POSTERIORES AL DÍA EN QUE EL DEMANDANTE FIRMA ESTE ACUERDO Y EXENCIÓN GENERAL.**

**PARA REVOCAR O RESCINDR EFECTIVAMENTE, LA REVOCATORIA O RESCISIÓN DEBE HACERSE POR ESCRITO Y DEBE ENVIARSE POR ESCRITO EN UN LAPSO DE SIETE (7) DÍAS A DALE OWENS A JACKSON LEWIS, P.C., 1155 PEACHTREE STREET NE, SUITE 1000, ATLANTA, GEORGIA 30309-3600, Y DEBE INDICAR, "POR MEDIO DE LA PRESENTE REVOCO LA RENUNCIA A MIS RECLAMOS ADEA". LA REVOCATORIA DEBE ENTREGARSE PERSONALMENTE A DALE OWENS O A SU DESIGNADO, O ENVIARSE POR CORREO A DALE OWENS A LA DIRECCIÓN ANTES INDICADA Y SELLARSE EN LOS SIETE (7) DÍAS CALENDARIO DESPUÉS DE QUE EL DEMANDANTE FIRME ESTE ACUERDO Y EXENCIÓN GENERAL. CUALQUIER REVOCATORIA OPORTUNA CONFORME A ESTE PÁRRAFO SOLO REVOCA LA RENUNCIA DEL DEMANDANTE AL ADEA Y NO IMPACTARÁ LA VALIDEZ DEL RESTO DE LA EXENCIÓN GENERAL DE LOS RECLAMOS DEL DEMANDANTE, PERO**

**EXONERARÁ A TURKEY VALLEY FARMS Y LSI DE CUALQUIER OBLIGACIÓN DE PAGAR LA INDEMNIZACIÓN AUMENTADA ANTES MENCIONADA.**

**POR TANTO, EL DEMANDANTE ACUERDA QUE EL DEMANDANTE, DE MANERA LIBRE Y CONSCIENTE Y DESPUÉS DE LA DEBIDA CONSIDERACIÓN, SUSCRIBE ESTE ACUERDO CON LA INTENCIÓN DE RENUNCIAR, SALDAR Y RESOLVER TODOS LOS RECLAMOS QUE EL DEMANDANTE TENGA O PUDIERA TENER EN CONTRA DE LOS EXONERADOS, A PARTIR DE LA FECHA EN LA QUE EL DEMANDANTE FIRMA ESTE ACUERDO.**

El Demandante de forma consciente y voluntaria firma este Acuerdo y Exención General a partir de la fecha establecida a continuación:

*[INSERTE EL NOMBRE DEL DEMANDANTE INDIVIDUAL MENCIONADO]*

_____   08/30/15_____

TURKEY VALLEY FARMS, LLC


Por:_____


Fecha:_____


LIFE-SCIENCE INNOVATIONS, LLC


Por:_____


Fecha:_____


6 de 6